### 4086.  PIRKLE *v.* THE STATE.

1. The evidence supports the verdict.
2. Where one is present aiding and abetting in the commission of a crime, and relies upon the defense that his presence and participation were due to coercion or compulsion by those who actually committed the offense, he must show such facts and circumstances as would indicate that he was in danger of present and immediate violence, and that he acted solely through such fear.

3. The trial judge, with substantial fairness and accuracy, submitted to the jury the issue made by the evidence and the statement of the accused as to whether his presence and participation were voluntary or due to coercion.

DECIDED APRIL 16, 1912.

Indictment for robbery; from Hall superior court—Judge J. B. Jones. March 5, 1912.

*Johnson & Johnson,* for plaintiff in error.

*Robert McMillan, solicitor-general,* contra.

HILL, C. J. Roe Pirkle was jointly indicted with William Tumlin and Charlton Henry for robbery. On the trial they severed. Tumlin and Henry were convicted, and on the next day Pirkle was convicted. He excepted to the refusal of his motion for a new trial.

1. The evidence, briefly stated, shows that the prosecutor had been to Gainesville, Georgia, and had sold $25 worth of hogs and apples, and was about two and a half miles from Gainesville, on his way home, driving his wagon, when the three defendants overtook him. They were in a buggy, and Pirkle was driving the horse. Pirkle drove his buggy by the prosecutor's wagon and immediately turned his horse and buggy in front of the prosecutor's team and stopped him; whereupon Tumlin and Henry jumped out of the buggy, one of them holding a pistol on the prosecutor, while the other demanded his money, and in fear of his life he delivered up his money. While the act of robbery was taking place Pirkle remained in the buggy, holding the horse, and did not take any active part in the actual robbery. As soon as the robbery was consummated the three men drove off in the buggy, leaving the prosecutor in the road. It was also shown that the three defendants stopped at a farmer's house and inquired as to how long it had been since the prosecutor passed with his wagon, Pirkle participating in the inquiry. This witness also testified that Pirkle asked him for a pistol, stating that he was with "a rough crowd" and wanted a pistol. The accused, in his statement, claimed that he had nothing to do with the robbery; that the other two men compelled him to go with them, and that he would have run off and left them, but was afraid they would shoot him. It is insisted that there was no evidence indicating that he had participated in the commission of the crime; that at most the evidence showed that he was simply present, but not in any manner aiding or abetting the other two men in the robbery.

There was some evidence from which the jury might have inferred that the plaintiff in error was not only present at the time the crime was committed, but that he also aided and abetted his two companions. His act of intercepting the team of the prosecutor by driving immediately in front of him, his remaining in the buggy holding the horse, and driving off with the other two after the commission of the crime, and his previous inquiry as to how long it had been since the prosecutor passed the farm-house, were circumstances from which the jury might have inferred his criminal participation. It is immaterial whether his participation was as a principal in the first degree, or in the second degree. His statement that he was coerced in what he did by the other two men and was forced to remain with them was entirely a question for the jury, and it was not accepted as the truth. On the general grounds, therefore, we conclude that the evidence was sufficient to warrant the verdict of guilty.

After the accused had made his statement to the jury the court allowed the State to introduce, over the defendant's objection, the witness mentioned above who testified in reference to the conversation that took place between him and the three men when they were apparently following the prosecutor; the objection being that this was not in rebuttal of the statement, and that the solicitor-general did not request the court to allow him to introduce the witness on the ground that he had forgotten or overlooked the testimony. The evidence seems to have been in rebuttal of the statement. However, the question of allowing additional evidence and reopening the case for that purpose at any stage of the trial is a matter in the discretion of the trial judge.

2. The following excerpt from the judge's charge is objected to: "I charge you that if a man is compelled to do a thing that he ordinarily would not do, the evidence and circumstances must convince the jury that the man acted in what he did do through fear." It is insisted that this was placing "a too heavy burden of proof upon the accused, and he was only required to raise in the minds of the jury a reasonable doubt as to whether or not he voluntarily participated in the offense, or was coerced or compelled to do so against his will. The language of the judge is inapt and probably subject to the criticism made against it; but, considered in the light of the context of the entire charge, we do not think the error is of sufficient gravity to require the grant of a new trial.

The court did charge expressly that the burden was on the State to prove to the satisfaction of the jury, beyond all reasonable doubt, that the accused did participate in the commission of the offense.

3. Objection is also made to the following excerpt from the charge: "If a man should willingly go into an unlawful enterprise and engage in it or abet in it, though he himself might not point a gun or pistol, yet if he was a well-wisher to it, took part in it and aided in it, he would be just as guilty as the man who did point the pistol." It is claimed that this charge was argumentative; that it in effect told the jury that if the accused was simply a well-wisher, this would be sufficient to make him guilty of participation in the crime; that it was too general and indefinite, and did not with sufficient clearness define to the jury the meaning of the words "aid and abet;" that it was the duty of the court to have told the jury explicitly that the accused could not be guilty unless he did some overt act in the commission of the crime. The use of the word "well-wisher" would have been improper, if unexplained in the context. Mere presence or acquiescence in or silent consent to the commission of a crime would not be sufficient to prove that one was an actual participant in the commission of the offense, unless his presence was such as to encourage those who did participate in the crime, or unless he was aiding and abetting in the commission of the crime by keeping watch while his companions actively committed the offense. Keeping watch, where several join together to commit a crime, makes the watcher a principal in the second degree, and in this case, if the jury believed that the accused did nothing more than to stand by, holding the horse and buggy so that his confederates might have a convenient opportunity of escape after the commission of the crime, they would have been authorized to find that he was aiding and abetting. But when we consider the context in which this word "well-wisher" was used, it is manifest that the jury could not have been misled by it, for the charge clearly instructed them that the evidence must show that the accused took part in the commission of the crime and aided in it, although he did not actually point the pistol and demand the money, before he could be found guilty.

We do not think the charge is subject to the other objections made to it, but think that it substantially stated the law correctly.

*Judgment affirmed.*